IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSCAR AGUILAR, | : | CIVIL NO. 3:12-CV-78 |
| | : | |
| Petitioner, | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN STRADA, et al., | : | |
| | : | |
| Respondents. | : | |

### REPORT AND RECOMMENDATION

I.  **Introduction**

In this case, the petitioner, a federal prisoner, invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case. Having conducted this review, we find no error in that calculation, which properly allocates time previously served by Aguilar between his various state and federal sentences. Therefore, we recommend that this petition for a writ of habeas corpus be denied. We further recommend that, to the extent Aguilar is challenging decisions originally made by the sentencing court in California in 2008, those complaints should be addressed by the sentencing court. Therefore, this aspect of Aguilar's petition should either be dismissed or transferred to the sentencing court.

## II. Statement of Facts and Case

In this case the interplay of state and federal sentences which forms the basis for this sentence credit calculation began on March 13, 2006, when local authorities in California arrested the petitioner, Oscar Aguilar, and charged him with the Sale/Transport of a Controlled Substance. (Doc. 6, Declaration of Kimmela O. Boyd Ex. 2 ¶ 2)  Six weeks later, on May 1, 2006, the Superior Court of California sentenced Aguilar to a five-year term of imprisonment, following his conviction on this charge of Sale/Transport of a Controlled Substance.  Aguilar received jail-time credit against this state sentence for the 74 days he spent in custody prior to his sentencing. (Id. ¶ 3; Attach. B.)

At the same time that these state proceedings were on-going, Aguilar also faced a federal indictment.  Thus, on April 13, 2006, the United States District Court for the Central District of California indicted Aguilar for Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Case Number CR 06-288(B)-15 FMC). (Id. ¶ 4; Attach. C.)  On October 23, 2006, the United States District Court for the Central District of California issued a Writ of Habeas Corpus Ad Prosequendum for Aguilar compelling him to appear in federal court and answer to this drug trafficking charge.

(Id. ¶ 5; Attach. D.)  Federal officials took Aguilar into federal custody based upon the Writ on November 17, 2006. (Id. ¶ 6; Attach. E(Filed under seal.).)

Ultimately, Aguilar's federal case was resolved by his guilty plea and sentencing on February 1, 2008, in the United States District Court for the Central District of California. (Id. ¶ 7; Attachs. D, E(Filed under seal.))  Aguilar has attached some fragmentary records of this sentencing proceeding to his habeas corpus petition. (Doc. 1)  These admittedly incomplete records indicate that Aguilar pleaded guilty to this charge pursuant to the terms of a binding plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (Doc. 11-1, p.6)  Under the terms of this agreement the parties jointly agreed that the court should impose a 192 month sentence. (Id.)  The parties made this recommendation to the court while "recognizing that the guideline sentence will be considerably higher" than the 192 moth jail term called for under the plea agreement. (Id., p.5.)

At the time of Aguilar's sentencing, defense counsel also asked the court to impose a sentence which would effectively have granted him the relief he now seeks in this petition; that is, retroactive credit for the time spent in state custody since April 2006, and a concurrent term of incarceration with his state sentence which had been imposed two years earlier. (Id., p.5.)  The fragmentary court records provided by Aguilar indicate that the sentencing judge was skeptical regarding these requests.

3

Thus, the sentencing transcript indicates that the court stated that it was "uncertain as to whether the court" could take this step. (Id.)[1] The court then went on to observe that: "I could put on the J&C arrest date April 13, 2006, but I'm not sure if it really affects how they calculate custody time . . . ." (Id., p. 6.) The court then sentenced Aguilar to the stipulated 192-month term of imprisonment agreed to by the parties. While the court's sentence also contained a recommendation that "[c]redits for custody should begin April 13, 2006, the date of the defendant's arrest," (Doc. 6, ¶ 6; Attach. E(Filed under seal)), the sentencing judge made no further recommendations as to length or type of sentence.

At the time of this sentencing, Aguilar was still being held by federal officials on a writ from the state of California. Following his sentencing, Federal officials returned Aguilar to the state facility. (Id.) Eight months later, on October 8, 2008, Aguilar was paroled from his state of California sentence, (id. ¶ 8; Attach. B), and then taken into custody by federal officials on a federal detainer. (Id.; Attach. F.) In accordance with 18 U.S.C. § 3585(a), prison officials then calculated Aguilar's federal sentence credit, crediting the time spent by Aguilar in custody from April 2006 to

---

[1]We note that in the transcript provided by Aguilar, the petitioner has redacted the text of the court's remarks after the court stated in response to this request: "I am also uncertain as to whether the court. . . . " Therefore, the full scope of the sentencing judge's uncertainty on this issue is not before us due to Aguilar's editorial choices.

October 2008 against his five year state sentence, and determining that Aguilar's federal sentence commenced when he came under the primary jurisdiction of federal authorities on October 8, 2008. (Id. ¶ 9; Attach. G.)

Dissatisfied with this sentence calculation, Aguilar filed this petition for writ of habeas corpus on January 12, 2012. (Doc. 1)  In his habeas corpus petition, Aguilar advanced a different sentencing credit computation, arguing that the Bureau of Prisons ("BOP") incorrectly computed his federal sentence by not providing him federal credit for the time he spent in state custody prior to his federal sentencing.

This petition has been briefed by the parties (Docs. 1 and 6) and is now ripe for resolution.  For the reasons set forth below, it is recommended that the petition be denied, since the Bureau of Prisons has accurately calculated the sentence credit that Aguilar is entitled to receive on the facts of this case in accordance with the law which governs such credits.  It is further recommended that, to the extent that Aguilar is complaining that the sentencing court erred in not granting him a concurrent sentence, that issue should be raised in the first instance with the sentencing court though a motion pursuant to 28 U.S.C. §2255.

### III. Discussion

#### A. To The Extent That It Challenges the Bureau of Prisons' Sentence Calculation, Aguilar's Petition Fails on its Merits.

At the outset, to the extent that Aguilar's petition invites this Court to review a sentence credit calculation conducted by the Bureau of Prisons for an inmate who was serving both state and federal sentences, this petition fails on its merits. There are two component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254-55 (10th Cir. 2006). As this Court has aptly observed: "'Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.' United States v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y.1993)." Chambers v. Holland, 920 F.Supp. 618, 621 (M.D.Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a specific statutory and regulatory system for calculating credit for time served by federal

prisoners. A key component of this system involves the delegation of authority for initial sentence computations. By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

Chambers v. Holland, supra, 920 F.Supp. at 621.

However, as the Supreme Court has recognized, United States v. Wilson, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute; namely, 18 U.S.C. § 3585, which provides that:

> (a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

This statute, and case law construing the statute, then guide us in addressing the two questions which lie at the heart of Aguilar's habeas petition: first, when did Aguilar's sentence commence; and, second, to what extent may Aguilar receive credit for any time already spent in custody?

With respect to the first of these questions regarding when Aguilar's sentence commenced, it is well-settled that "a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F. App'x 591, 592-93 (3d Cir. 2009). Therefore, Aguilar's invitation to retroactively have this federal sentence commence two years prior to its imposition, in April of 2006, is simply a legal nullity and the sentencing judge's observation that it was "uncertain as to whether the court" could take this step is entirely well-taken. Furthermore, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a). Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence. See 18 U.S.C. § 3585(a). See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990)." Taylor v. Holt, 309 F. App'x at 592.

In this case, Aguilar was ultimately received by the Attorney General for service of his sentence in October of 2008 when he was paroled from his California state

sentence. Thus, by operation of law, this date constitutes the date upon which this particular sentence commenced.

Section 3585, and case law construing this statute, also define for us the answer to the second question we must examine: to what extent the defendant may receive credit for any time already spent in custody against his federal sentence. In this regard, we begin with the proposition that Aguilar may not receive: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor v. Holt, supra 309 F.Appx. at 593.

It is also clear beyond any dispute that a defendant, like Aguilar, who is serving a state sentence but is taken temporarily from state custody to federal court pursuant to a writ of habeas corpus ad prosequendum does not come under federal "custody" for purposes of calculating prison sentence credit under § 3583. Indeed, courts have repeatedly examined this question, and consistently held that temporarily holding a prisoner on a writ does not equate to custody for purposes of calculating sentence credit. See, e.g., Rashid v. Quintana, No. 09-4079, 2010 WL 1141386 (3d. Cir. March 25, 2010); Taylor v. Holt, supra; United States v. Hayes, 535 F.3d 907 (8th Cir. 2008); D'Amario v. Zenk, 131 F. App'x 381 (3d Cir. 2005); Thomas v. Whalen, 962 F.2d 358 (4th Cir. 1992); Chambers v. Holland, supra; Miller v. United States, 826 F.Supp. 636

9

(N.D.N.Y. 1993); United States v. Smith, 812 F.Supp. 368 (E.D.N.Y. 1993); United States v. Killion, 788 F.Supp. 1165 (D.Kan. 1992). Accordingly, these cases uniformly reject efforts by federal prisoners to secure jail time credit for periods in which they were held temporarily in federal court on a federal writ while serving their state sentences. Id. The rationale for this rule, which enjoys broad acceptance by the courts, can be simply stated:

> A federal sentence does not begin to run, . . ., when a defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation. Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992); Hernandez v. United States Attorney General, 689 F.2d 915, 918-19 (10th Cir.1982); Roche v. Sizer, 675 F.2d 507, 509-10 (2d Cir.1982); see also Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir.1991) (producing state prisoner under writ of habeas corpus ad prosequendum does not relinquish state custody); Salley, 786 F.2d at 547-48 (defendant produced and sentenced in federal court via writ of habeas corpus ad prosequendum did not begin to serve consecutive federal sentence until delivered into federal custody). This rule derives from the fact that the federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities. Whalen, 962 F.2d at 361 n. 3; In re Liberatore, 574 F.2d 78, 79 (2d Cir.1978); Crawford v. Jackson, 589 F.2d 693, 695 (D.C.Cir.1978).

United States v. Smith, 812 F.Supp. 368, 370-71 (E.D.N.Y. 1993).

These basic legal tenets control here, and compel denial of Aguilar's petition for writ of habeas corpus, to the extent that it challenges the Bureau of Prisons' sentence calculation in this case. Here, it is undisputed that Aguilar commenced his sentence

for the federal drug offense in October 2008. This is undeniably the correct starting point for Davis' sentence since "a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed, See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)," Taylor v. Holt, 309 F.Appx. 591, 592-93 (3d Cir. 2009), and "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a).

At the time that he was sentenced for this federal crime, Aguilar had already been sentenced in state court for his role in an episode of drug trafficking. In connection with that prior state drug sentence, Aguilar received credit against his state sentence for the time he was held on writ by federal authorities awaiting his federal plea and sentencing. Since Aguilar had received credit for this time in prison against his state drug sentence he was not entitled to further credit for this period of imprisonment against his federal jail sentence. Indeed, it is well settled that Aguilar may not receive such: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor v. Holt, supra 309 F. App'x at 593.

In sum, the sentence credit calculation undertaken in this case paid full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date

the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b). Moreover, in reaching this calculation of Aguilar's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law. Consistent with case law, it declined to credit Aguilar for time that was already credited against his separate state sentence, but ensured that Aguilar received full credit against his federal sentence for jail time which he served that had not been credited against another sentence. Thus, this federal jail time credit calculation, provided Aguilar with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in United States v. Wilson, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for his detention time." Id.

Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides Aguilar all the credit he is entitled to receive, this aspect of Aguilar's petition for writ of habeas corpus should be denied.

> **B.    To the Extent That Aguilar Is Protesting Aspects of the Original Federal Sentence Imposed Here Those Matters Should be Addressed By the Sentencing Court**

Liberally construed, it may also be that Aguilar's petition is not simply challenging the Bureau of Prisons' sentence credit calculation, but also taking issue with the underlying sentence imposed by the district court in the United States District

Court for the Central District of California, since that sentence declined to expressly run this sentence concurrently with Aguilar's state sentence, or otherwise credit him in any fashion for time served on state charges.

To the extent that Aguilar is challenging this exercise of sentencing discretion by the court in California, we find that the petitioner has not made out a valid case for pursuing habeas relief in this district in lieu of filing a motion to vacate or correct sentence with the sentencing judge in the United States District Court for the Central District of California district under 28 U.S.C. § 2255.  This showing is a prerequisite for a successful habeas petition in this particular factual context.  Therefore, since the petitioner has not made a showing justifying habeas relief at this time, this petition is subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,  28 U.S.C. § 2254, which rule also applies to § 2241 petitions under Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  See, e.g., Patton v. Fenton, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979) (explaining that Rule 4 is "applicable to Section 2241 petitions through Rule 1(b)").

Rule 4 provides in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 4 of

the Rules Governing Section 2254 Cases in the United States District Courts. Summary dismissal of this habeas petition, which seeks to correct a federal prisoner's sentence, would be appropriate here since it is well-settled that: "[T]he usual avenue for federal prisoners seeking to challenge the legality of their confinement," is by way of a motion filed under 28 U.S.C. § 2255. <u>In re Dorsainvil</u>, 119 F.3d 245, 249 (3d Cir. 1997). <u>See also</u> <u>United States v. Miller</u>, 197 F.3d 644, 648 n.2 (3d Cir. 1999) (stating that § 2255 provides federal prisoners a means by which to bring collateral attacks challenging the validity of their judgment and sentence); <u>Snead v. Warden, F.C.I. Allenwood</u>, 110 F. Supp. 2d 350, 352 (M.D. Pa. 2000) (finding that challenges to a federal sentence should be brought in a motion filed under 28 U.S.C. § 2255). Indeed, it is now clearly established that Section 2255 specifically provides the remedy to federally-sentenced prisoners that is the equivalent to the relief historically available under the habeas writ. <u>See</u> <u>Hill v. United States</u>, 368 U.S. 424, 427 (1962) (stating, "it conclusively appears from the historic context in which § 2255 was enacted that the legislation was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined").

Therefore, as a general rule, a § 2255 motion which is filed in the court of conviction "supersedes habeas corpus and provides the exclusive remedy" to one in

custody pursuant to a federal conviction. Strollo v. Alldredge, 463 F.2d 1194, 1195 (3d Cir. 1972). Indeed it is clear that "Section 2241 'is not an additional, alternative or supplemental remedy to 28 U.S.C. § 2255.'" Gomez v. Miner, No. 3:CV-06-1552, 2006 WL 2471586, at *1 (M.D. Pa. Aug. 24, 2006) (quoting Myers v. Booker, 232 F.3d 902 (10th Cir. 2000)) Instead, Section 2255 motions are now the exclusive means by which a federal prisoner can challenge a conviction or sentence that allegedly is in violation of the Constitution or federal laws or that is otherwise subject to collateral attack. See Davis v. United States, 417 U.S. 333, 343 (1974). Thus, federal inmates who wish to challenge the lawfulness of their convictions or sentences must typically file motions under § 2255 in the court of conviction.

This general rule admits of only one, narrowly-tailored, exception. A defendant is permitted to pursue relief under 28 U.S.C. § 2241, in lieu of a motion under §2255, only where he shows that the remedy under § 2255 would be "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); see also United States v. Brooks, 230 F.3d 643, 647 (3d Cir. 2000) (recognizing availability of § 2241 in cases where petitioners have no other means of having claims heard). This exception is narrowly tailored. The inadequacy or ineffectiveness must be "a limitation of scope or procedure . . . prevent[ing] a § 2255 proceeding from affording . . . a full hearing and adjudication of [a] wrongful detention claim." Okereke v. United States, 307 F.3d 120

(3d Cir. 2002) (citing Cradle v. United States, 290 F.3d 536, 538 (3d Cir. 2002) (per curiam)). "It is the inefficacy of the remedy, not the personal inability to use it, that is determinative." Cradle, 290 F.3d at 538-39 (citing Garris v. Lindsay, 794 F.2d 722, 727 (D.C. Cir. 1986)). Accordingly, "[s]ection 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255." Cradle, 290 F.3d at 539. Furthermore, if a petitioner improperly challenges a federal conviction or sentence under § 2241, the petition may be dismissed for lack of jurisdiction. Application of Galante, 437 F.2d 1164, 1165 (3d Cir. 1971).

In this case, the representations that the petitioner makes in his petition do not demonstrate that he is entitled to resort to seeking habeas relief under 28 U.S.C. § 2241 on the grounds that a motion under 28 U.S.C. § 2255 would be ineffective or inadequate. None of the petitioner's claims fall within the narrow exception outlined in Dorsainvil, in which § 2241 relief could be available in lieu of a motion under 28 U.S.C. §2255. In Dorsainvil, the Third Circuit held that § 2241 relief was available only in very narrow instances to a petitioner who had no earlier opportunity to challenge his conviction for conduct that an intervening change in substantive law made no longer criminal. Dorsainvil, 119 F.3d at 251.

This petition simply does not demonstrate that this narrow exception has any legitimate application to the instant proceedings. Recognizing that this matter is not appropriately brought before this Court as a habeas petition, we acknowledge that the petition could be dismissed in its entirety. In addition, we note that this aspect of the petition could also be treated as a §2255 motion, and transferred to the sentencing judge for further consideration, so the district court which presided over Aguilar's initial conviction and sentence may also consider this petition. Federal habeas corpus proceedings are essentially civil proceedings, and as such are governed by the statutes and rules which apply generally to civil litigation. Thus, such petitions are also subject to the general rules governing civil litigation, including Title 28 U.S.C. § 1404(a), which states as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district of division where it might have been brought."

Adhering to this familiar principle, in the past when courts in this district have been confronted by habeas petitions, like the petition lodged here, which challenge aspects of a conviction and sentence imposed by another federal district judge, they have often relied upon §1404 to order the transfer of the petition to the sentencing court for its consideration. Stover v. Sniezek, No. 1:10-CV-1213, 2010 WL 3220318, *4 (M.D.Pa. Aug. 12 2010)(Jones, J.); see, e.g., See Argentina v. Sniezek, Civil No. 4:09-

CV-0382, 2010 WL 2632561, *2 (M.D.Pa. Jun.28, 2010) (Jones, J.); Gardner v. Williamson, Civil No. 3:07-CV-1788, 2008 WL 1752229, *4 (M.D.Pa. April 14, 2008) (Munley, J.).

In this case, the prerequisites for a transfer of this matter are fully satisfied since such a transfer would promote the interests of justice. As we have previously noted when transferring other petitions to the sentencing court: "Because the District Court . . . sentenced the petitioner . . , the court in that district has access to the evidence that led the court to make its sentencing . . . , determination and can best access any witnesses necessary to investigate the case. The interests of judicial efficiency and economy would [therefore] best be served by transferring the case to the [sentencing court]." Gardner v. Williamson, supra, 2008 WL 1752229, at *4.

Finally, we note that an order transferring this aspect of this case to the sentencing judge as a §2255 motion also protects the petitioner's rights as a *pro se* litigant. Such a transfer order avoids any unintended prejudice to the petitioner which might flow from a dismissal of this action. See Burnett v. New York Cent. R. Co., 380 U.S. 424, 430 (1965). Moreover, addressing the petition in this fashion would not constitute a ruling on the merits of the petitioner's claims, thus assuring that the petitioner can have his case heard on its merits in the most appropriate forum. See, 18 Wright, Miller & Cooper Federal Practice and Procedure, § 4436, at 338 (stating that

"a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits") (footnote omitted).

In sum, to the extent that Aguilar invites this Court under the guise of a habeas petition to consider a question that is properly brought before another judge in a different court through a motion to correct sentence under 28 U.S.C. §2255, we should decline this invitation, given that Aguilar has made no showing that § 2255 is inadequate or ineffective to test the legality of his conviction and sentence. Consequently, this Court should either dismiss this aspect of the petition or transfer this aspect of the petition to the sentencing judge so that court may address this matter as a motion under 28 U.S.C. §2255.

### IV.  Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, to the extent that it challenges the sentencing calculation conducted by the Bureau of Prisons. It is further RECOMMENDED that, to the extent that Aguilar is complaining that the sentencing court erred in not granting him a concurrent sentence, that issue should be raised in the first instance with the sentencing court though a motion pursuant to 28 U.S.C. §2255.  Finally, IT IS RECOMMENDED that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23rd day of February 2012.

           *S/Martin C. Carlson*
           Martin C. Carlson
           United States Magistrate Judge